Melvin **GOODSPEED**, Appellant,

v.

The **STATE** of Texas.

No. PD–1882–03.

Court of Criminal Appeals of Texas.

April 6, 2005.

---

**5.** *Id.*

**6.** *Id.*

**7.** § 508.149(a).

James E. Davis, Texarkana, for appellant.

Nicole Habersang, Assist. DA, Texarkana, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY and COCHRAN joined.

We must determine whether the failure to ask any questions during voir dire and the exercise of two peremptory challenges on jurors who had already been excused constitute performance that is so obviously deficient that inquiry into the reasons for counsel's conduct becomes unnecessary. We hold that an inquiry into the reasons for counsel's conduct is still needed. Consequently, we reverse the judgment of the court of appeals.

1. *Goodspeed v. State,* 120 S.W.3d 408 (Tex. App.-Texarkana 2004).

2. *Id.* at 410–411.

## I. BACKGROUND

After the State conducted its voir dire, defense counsel addressed the venire but did not ask any questions. In his comments, defense counsel stated that he had listened to the prosecutor for approximately two hours and that she had covered everything, including the defense side of the case. Although defense counsel exercised all ten of his peremptory challenges, two of those challenges were used on prospective jurors who had previously been excused by the trial court.

Appellant was convicted of aggravated sexual assault of a child under age fourteen and sentenced to ninety-nine years in prison. Although a motion for new trial was filed, and an ineffective assistance of counsel claim was raised in the motion, no complaint was made with regard to the above-discussed conduct, and no hearing was held on the motion.

But on appeal a complaint was made about the conduct. The court of appeals held that this conduct constituted deficient performance, because there was no possibility that it could have been based on legitimate trial strategy.[1] The court explained the importance of voir dire and held that the failure to ask questions amounted to no assistance to the defendant and that no conceivable trial strategy would permit counsel to waive voir dire.[2] The court of appeals found the failure to ask questions to be deficient in light of the need for fair and impartial jurors and the tendency of questioning to elicit answers that form the basis for a challenge for cause or provide a gender or race-neutral reason for exercising a peremptory challenge.[3]

3. *Id.* at 411.

The court of appeals further believed that the failure to examine the panel prevented the defense from ascertaining whether some members of the venire could not consider the full range of punishment.[4] The court observed that appellant was eligible for community supervision, and while the State did explain the range of punishment as being "probation up to ninety-nine years or life" and asked the prospective jurors if they could consider the full range of punishment, the court of appeals felt that the State did not clearly inquire into whether prospective jurors could consider probation as a sentencing option.[5]

The court of appeals also found that its deficient performance holding was required by defense counsel's use of peremptory strikes on two previously excused prospective jurors.[6] The court of appeals characterized those strikes as "wasted" and found that they cast "extreme doubt on whether Goodspeed's counsel was actively participating in the adversarial process to ensure a just and fair trial."[7]

## II. ANALYSIS

■ Ineffective assistance of counsel claims are evaluated under the two-part test formulated by the Supreme Court in *Strickland v. Washington*,[8] requiring a showing of both deficient performance and prejudice.[9] A *Strickland* claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim.[10] Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped.[11] This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight[12]—where counsel's reasons for failing to do something do not appear in the record.[13] We have said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."[14] Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it."[15]

■ Despite the court of appeals's characterization of counsel's conduct as "no assistance," we cannot conclude that the failure to ask any questions in voir dire constitutes conduct so outrageous that no competent attorney would have engaged in it. Defense counsel's articulated reason for declining to ask questions—that the prosecution's questioning adequately covered the defense's concerns—could be a legitimate trial strategy under the appropriate circumstances. The Supreme Court of Montana, for example, has declined to find defense counsel ineffective for asking

---

4.  *Id.* at 411–412.

5.  *Id.* at 412.

6.  *Id.*

7.  *Id.*

8.  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

9.  *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim.App.1999).

10. *Id.* at 813.

11. *Id.* at 813–814

12. *Id.* at 813.

13. *Id.* at 814.

14. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App.2003).

15. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim.App.2001), *cert. denied*, 537 U.S. 1195, 123 S.Ct. 1351, 154 L.Ed.2d 1030 (2003).

only one question in voir dire where the record revealed an "extensive and thorough voir dire by the State." [16]

The dissenting opinion relies on *Armstrong v. State* [17] for the proposition that defense counsel has an obligation to ask questions during voir dire, but *Armstrong* held no such thing. The issue in *Armstrong* was whether a prospective juror's failure to reveal that she and the prosecutor were close friends constituted juror misconduct. [18] We held that it did not, because no one had ever asked the panelists if they knew the prosecutor. [19] It was only in this context that we said that defense counsel has an "obligation" to ask questions. [20] Our holding today does not conflict with precedent.

The court of appeals opinion indicates that defense counsel's failure to ask questions was not a valid trial strategy in this particular case because the court believed that the veniremembers were not adequately questioned on whether they could fairly consider the issue of probation. But appellant's trial counsel has not been afforded the opportunity to respond to this articulated concern. A number of valid trial strategies could prompt counsel to refrain from asking questions regarding a prospective juror's ability to fairly assess a certain punishment, including probation. In the capital murder context, in which a jury is called upon to choose between life and death, and where a juror's ability to fairly consider the entire range of punishment is at least as important as it is here, several courts have stated that the failure to ask "life-qualifying" questions (whether a prospective juror can fairly consider a life sentence) does not necessarily constitute deficient performance. [21] According to the Sixth Circuit, counsel may have validly refrained from asking such questions because he did not want prospective jurors to hear each other's answers, because he was afraid death-leaning jurors might influence other jurors, because he was satisfied with the composition of the jury and its ability to honestly and ably perform its duties, or because he did not want to aid the prosecution in deciding how to exercise its own peremptory challenges. [22] The Supreme Court of Tennessee has suggested that defense counsel could validly refrain from asking such questions on the ground that the focus of the defense was on guilt and "[t]oo intense an inquiry" regarding punishment "may be perceived by potential jurors as a concession that credible evidence of guilt exists." [23]

All of these reasons are potentially applicable in a case such as this one. Counsel might have been afraid that more punishment-oriented jurors could influence others jurors; he may have been satisfied with the composition of the panel; he may have refrained from asking questions about probation to avoid giving the State more information on which to exercise peremptory challenges; he may have believed that such questioning would be perceived

---

16. *State v. Kolberg*, 241 Mont. 105, 108, 785 P.2d 702, 704 (1990).

17. 897 S.W.2d 361 (Tex.Crim.App.1995).

18. *Id.* at 363–364.

19. *Id.* at 364.

20. *Id.* at 363–364.

21. *Stanford v. Parker*, 266 F.3d 442, 453–454 (6th Cir.2001), *cert. denied*, 537 U.S. 831, 123 S.Ct. 136, 154 L.Ed.2d 47 (2002); *Commonwealth v. Morris*, 546 Pa. 296, 307–309, 684 A.2d 1037, 1042–1043 (1996), *cert. denied*, 521 U.S. 1106, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997); *Hartman v. State*, 896 S.W.2d 94, 105 (Tenn.1995).

22. *Stanford*, 266 F.3d at 454.

23. *Hartman*, 896 S.W.2d at 105.

as admitting there was credible evidence of guilt; or he may have had any combination of these reasons. Counsel might also have believed that the facts of this aggravated assault of a child case were so severe that there was little or no possibility of appellant receiving probation upon conviction. These proposed reasons are speculative, but as discussed above, that is the problem with trying to evaluate an ineffective assistance claim in which defense counsel has not been given an opportunity to respond, and why such claims are usually rejected.

Finally, the court of appeals contends that counsel's deficient performance is revealed by his use of two peremptory challenges on jurors who had already been excused. Again, counsel has not been afforded the opportunity to respond.[24] But even if the strikes constitute deficient performance, appellant must show that they harmed him. This he has not done.

The judgment of the court of appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

JOHNSON, J., dissented.

PRICE, J., filed a concurring opinion in which COCHRAN, J., joined.

HOLCOMB, J., filed a dissenting opinion in which MEYERS, J., joined.

PRICE, J., concurring in which COCHRAN, J., joined.

I agree with the majority that the record in this case is inadequate for us to resolve the appellant's ineffective assistance of counsel claims. I write separately to explain the difference between this case and *Andrews v. State*.[1]

In *Andrews*, defense counsel failed to correct a misstatement of the law that was harmful to his client.[2] There was no possible reasonable trial strategy that would lead defense counsel to choose to remain silent. Thus, counsel's reasons, if any, were unnecessary to resolve the ineffective assistance of counsel claim.[3]

I have doubts about whether defense counsel in this case was pursuing a reasonable trial strategy when he failed to ask questions of the venire panel. Nonetheless, it is possible that there was some legitimate reason for counsel's choice that is not apparent in the record before us. In this case, the record is inadequate for us to determine whether counsel was ineffective. Habeas proceedings are a more appropriate avenue in this case.

With these comments, I join the majority opinion.

HOLCOMB, J., dissenting in which MEYERS, J., joined.

I respectfully dissent. I would hold that trial counsel's errors were such that appellant's claim of ineffective assistance of counsel is properly reviewable on direct appeal. *See Thompson v. State*, 9 S.W.3d 808, 814 n. 6 (Tex.Crim.App.1999). I would further hold that trial counsel's performance was deficient and tantamount to no counsel at all. *See Strickland v. Wash-*

24. *See People v. Lewis*, 50 Cal.3d 262, 290, 266 Cal.Rptr. 834, 786 P.2d 892, 909 (1990)(defense counsel not automatically ineffective for failing to exercise all of his allotted peremptory challenges).

1. *Andrews v. State*, 159 S.W.3d 98 (Tex.Crim. App. 2005).

2. *Id.* at 100.

3. *Id.* at 102. *See Matthews v. State*, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002) (concluding that "[C]ounsel cannot assert trial strategy as a defense for failure to object to comments which constitute an error of law and are inherently prejudicial").

*ington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

First, I agree with the court of appeals' conclusion that there could be no sound reason for trial counsel to entirely waive voir dire. *Goodspeed v. State,* 120 S.W.3d 408, 411–12 (Tex.App.-Texarkana 2003)(citing *Miles v. State,* 644 S.W.2d 23, 24 (Tex. App.-El Paso 1982, no pet.)). The right to question prospective jurors is implicit in the right to counsel and the right to an impartial jury. *Trevino v. State,* 572 S.W.2d 336, 336–37 (Tex.Crim.App.1978). The voir dire process is designed to insure that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App.1995). Moreover, this Court has said that defense counsel has an *obligation* to ask questions calculated to bring out information tending to show a juror's inability to be impartial and truthful. *See id.* at 363–64 (citing *Jones v. State,* 596 S.W.2d 134, 137 (Tex. Crim.App. [Panel Op.] 1980), *overruled on other grounds, Sneed v. State,* 670 S.W.2d 262, 266–67 (Tex.Crim.App.1984)). To say now that there may be some conceivable reason to waive voir dire, and therefore, defense counsel must have an opportunity to explain why he chose to waive that right, is not sound policy and conflicts with precedent from this court. *Linnell v. State,* 935 S.W.2d 426, 428 (Tex.Crim.App. 1996) (embodied in the right to counsel is the right to question venire so that counsel may intelligently exercise peremptory challenges and challenges for cause).

And, as a practical matter, voir dire provides the accused with the opportunity to employ several tactical advantages. In addition to those noted by the court of appeals,[1] it is common for attorneys to question prospective jurors to establish a rapport between the attorney and the prospective jurors, as well as to "humanize" the accused. *See* TEXAS LITIGATION PRIMER 57–58 (Trial Advocacy Institute, 2d ed.). This tactic would have been especially useful here as appellant was charged with aggravated sexual assault of a child.

More importantly, however, there is simply no excuse for failing to question the prospective jurors about whether they could consider the full range of punishment, which would include community supervision in this case. *Goodspeed v. State,* 120 S.W.3d at 413 (noting that the State did not address the range of punishment in its voir dire). Because the process of jury selection is one of the most critical parts of a criminal trial, it defies logic to insist that appellant bring these particular Sixth Amendment claims on habeas review so that trial counsel may offer a conceivable strategy for waiving his client's right to counsel, to a fair trial, and to a fair and impartial jury. *See Miles v. State,* 644 S.W.2d at 24.

Second, there can be no legitimate reason for a lawyer to use two peremptory strikes on prospective jurors who have been excused for cause. Allowing trial counsel an opportunity to explain this plain error would be a waste of judicial resources. And as Judge Meyers noted in *Thompson v. State,* forcing habeas review of ineffective assistance of counsel claims for errors that are plain on the face of the record prevents indigent appellants from obtaining a county-funded appellate record

1. *See Goodspeed,* 120 S.W.3d at 411 (citing 3 TEXAS CRIMINAL PRACTICE GUIDE: TRIAL § 72.03[1] (Matthew Bender & Co. ed., Aug. 2003)).

and the assistance of appointed counsel. 9 S.W.3d at 817 n. 4 (Meyers, J., dissenting).

Even though the record does not definitively reflect the reasons trial counsel acted as he did, I do not believe there is anything he could say under these circumstances to show that his actions were the product of a sound trial strategy.[2] Therefore, I believe this is one of the classic instances in which ineffective assistance of counsel may be adequately argued and reviewed on direct appeal, despite the lack of a record developed at a motion for new trial which gives trial counsel an opportunity to explain his actions. *See Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App. 2002) (generally, the record on direct appeal will not be sufficiently developed to show that counsel's representation was deficient under first prong of *Strickland* ); *Thompson v. State,* 9 S.W.3d at 814 n. 6 (noting that holding should not be construed to mean that an ineffective assistance claim can *never* be adequately reviewed on direct appeal); *see also Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim. App.1994) (record insufficient to show ineffective assistance of counsel where no peremptory strike or motion for cause was used on prospective juror who said he could not be impartial); *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992).

As to the question of prejudice, I do not disagree with the court of appeals resolution, but I would not apply the standard harm analysis to the errors made here, because the impact of the error could never be adequately shown. *See, e.g., Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) (requiring automatic reversal even where a single juror was excluded unconstitutionally and there was no suggestion of bias on the part of the jurors actually seated); *Batson v. Kentucky,* 476 U.S. 79, 106, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Gonzales v. State,* 994 S.W.2d 170, 172 (Tex.Crim.App.1999) (Price, J., dissenting); *Sloan v. State,* 809 S.W.2d 234, 238 (Tex.App.-Tyler 1988, pet. dism'd improvidently granted).

In *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997), we stated that, except for certain federal constitutional errors deemed structural by the United States Supreme Court, no error is categorically immune from a harmless error analysis. The situation here is different and is analogous to not having an attorney in the courtroom at all. *See Gideon v. Wainwright,* 372 U.S. at 344–45, 83 S.Ct. 792 (the total deprivation of counsel at trial is structural error). I would hold that the right to have counsel conduct voir dire is a right so basic to a fair trial that its infraction could never be treated as harmless error. *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see, e.g., Burdine v. Johnson,* 262 F.3d 336, 345 (5th Cir.2001) (sleeping counsel is equivalent to no counsel; counsel was absent at critical stage within meaning of *Strickland* and *Cronic* ). The Supreme Court has uniformly found

---

2. In his brief comments to the venire, trial counsel reveals at least some of his reasons for failing to ask any questions. Specifically, trial counsel told the venire "I am fairly brief in what I have to say and I will not take up all the time that she has taken in explaining this, that, and the other.... Well, I've listened to her for two hours more or less, and she's covered everything, even my side of the case...." Despite the fact that trial counsel's reasoning is reflected in the record, the majority believes we must give trial counsel yet another opportunity to explain why he waived voir dire and wasted two peremptory strikes. *See Mitchell,* 68 S.W.3d at 642 (a petition for writ of habeas corpus usually is the appropriate vehicle in which to present ineffective assistance of counsel claims because the reasonableness of counsel's choices often involves facts that do not appear in the appellate record). Here, counsel's reasons for waiving voir dire appear in the record.

constitutional error without any showing of prejudice when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding. *See Burdine v. Johnson,* 262 F.3d at 345. The error here defies a harm analysis because subjecting the error to *Strickland* prejudice would render meaningless the protections afforded by the right to counsel.[3] *See e.g., Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (reasoning that applying *Chapman* to an *Anders* violation would leave defendant without the very protection that *Anders* sought to provide)[4]; *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (error in denying Sixth Amendment right to self-representation not subject to harmless error analysis).

The court of appeals filed a thoughtful and well-reasoned unanimous opinion to address a clear question of legal non-representation. I applaud their effort to show that this type of malfeasance is wrong and harmful. Apparently we have now relegated this question to the highly problematic and uncertain world of habeas corpus. Unfortunately, this negates a scholarly opinion from the court of appeals.

I would affirm the judgment of the court of appeals rather than insisting that appellant bring his ineffective assistance claims on collateral review.[5]

---

**3.** However, even when applying the standard harm analysis, the error here could not be found harmless because, by effectively allowing the State to conduct voir dire for appellant, *Strickland's* central holding was violated; i.e., "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined the proper functioning of the adversarial process* that the trial cannot be relied on as having produced a just result." *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052 (emphasis added); *see also, United States v. Cronic,* 466 U.S. at 656–57, 104 S.Ct. 2039 (critical question is whether counsel's performance was so deficient that the process lost its character as a confrontation between adversaries).

**4.** *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**5.** *See Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997); *see also Mallett v. State,* 65 S.W.3d 59, 70 (Tex.Crim.App.2001) (Meyers, J., dissenting) (prior rejection of an ineffective assistance of counsel claim on direct appeal will not bar relitigation of the claim when an applicant offers evidence not contained in the direct appeal record).