In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00095-CR**
_____


**DARRON DEWAYNE DENBOW JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Orange County, Texas**
**Trial Cause No. C101380**

**MEMORANDUM OPINION**

Appealing his conviction of misdemeanor assault, Darron Dewayne Denbow Jr. challenges the sufficiency of the evidence supporting his conviction for assault, with an affirmative finding of family violence. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b) (West 2011); Tex. Fam. Code Ann. §§ 71.004(1), 71.005 (West 2008). Additionally, Denbow contends that he received ineffective assistance of trial counsel. We overrule both of Denbow's issues and affirm the trial court's judgment.

1

In his first issue, Denbow argues the evidence is insufficient to support his conviction. The standard under which an appellate court reviews challenges to the sufficiency of the evidence is settled. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In reviewing Denbow's challenge, we use the legal-sufficiency standard to determine whether the evidence supports each of the elements relevant to Denbow's conviction of assault. *Id.* In reviewing the sufficiency of the evidence, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). As the reviewing court, we are also required to "give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (citing *Jackson*, 443 U.S. at 318-19).

The information alleges that in December 2009, Denbow knowingly and intentionally injured C.S., a member of his household, by pushing C.S. into a wall. The evidence indicates that the altercation occurred in the home where C.S. and Denbow were living. C.S. and two other witnesses testified during Denbow's trial; Denbow did not testify. The version of events that C.S. described to the jury describes Denbow as having initiated the altercation. According to C.S., Denbow

was angry when he suddenly began choking her. C.S. explained that she pulled a box cutter from her bra after Denbow had her on the floor and was choking her, which allowed her to attempt to escape. According to C.S., when she attempted to leave the house Denbow tackled her, which caused her head to hit the wall. She testified that she suffered a mild concussion and a cut to her head.

Officer Timothy Talbert, who was working as a patrol deputy for the Orange County Sheriff's Department, went to C.S.'s house shortly after the altercation occurred. Officer Talbert testified that after arriving at her house, C.S. told him she had been assaulted by her boyfriend, Denbow. Officer Talbert explained that after he entered the house, he noticed that Denbow was not there; he also noticed that the home was in disarray and that there were some holes in the walls. According to Officer Talbert, C.S. said that Denbow shoved her head into a wall when she tried to get away from him. Officer Talbert took pictures of C.S.'s injury to her forehead; these photographs were admitted into evidence during the trial.

Based on the testimony of the 911-dispatcher, the trial court admitted a recording of the 911 call into evidence. During the call, C.S. notified the police that she had been assaulted, that her head hit a wall, and that Denbow was the person who assaulted her.

Under the charge, Denbow could be convicted of assault if, based on the evidence admitted in his trial, the jury could find that he "intentionally or

3

knowingly cause[d] bodily injury to [C.S.]" *See* Tex. Penal Code Ann. § 22.01(a)(1). According to Denbow, the evidence is insufficient to show that he committed assault because the evidence reflects that C.S. instigated the confrontation and escalated the matter by pulling the box cutter from her bra. Denbow concludes that he should not be convicted because the parties share equal blame.

Nonetheless, the record reflects that Denbow did not request an instruction at the conclusion of the trial asking if he had acted in self-defense. Even if the evidence supported his claim that C.S. shared responsibility for his conduct, a matter we need not decide, Denbow failed to secure a finding that excused him from having intentionally or knowingly injured C.S. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (instructing that a defendant must make a timely request of any defensive issue or object to the omission of the issue in the jury charge). Moreover, self-defense is not justified "in response to verbal provocation alone[,]" nor when a defendant provokes the other's use or attempted use of force. *See* Tex. Penal Code Ann. § 9.31(b)(1), (4) (West 2011).

Reviewing the evidence in the light favorable to the jury's verdict, the jury's conclusion that Denbow assaulted C.S. is supported by the testimony admitted into evidence during Denbow's trial. It was the jury's responsibility to fairly resolve any conflicts in the testimony, to weigh the evidence, and to draw

4

reasonable inferences from basic facts to ultimate facts. *See Hooper*, 214 S.W.3d at 13. The evidence is sufficient to support the jury's verdict. Issue one is overruled.

In Denbow's second issue, he argues that he received ineffective assistance of counsel. According to Denbow, his trial attorney should have requested a mistrial during voir dire when one of the panelists stated that he knew Denbow from having served on past grand juries. At that point, the record reflects that the prosecutor and Denbow's attorney approached the bench; during the bench conference, Denbow's attorney suggested that the prosecutor "just get off the subject." Resuming the questioning of the array, the prosecutor advised that particular panelist not to talk about anything related to his service on the grand jury. Otherwise, the questions asked during voir dire reflect that none of the other members of the array knew Denbow. Subsequently, the trial court struck the panelist who indicated he knew Denbow.

Denbow contends that trial counsel's failure to ask for a mistrial during voir dire constitutes ineffective assistance. Denbow also argues that trial counsel should have asked additional questions of the array to determine the effect of the panelist's statement on the others in the array.

The attorney who represented Denbow at trial did not testify to explain why he chose to handle the matter in the way it was handled. While Denbow testified during the hearing on his motion for new trial, his testimony does not reveal why

5

his attorney chose to handle the panelist's statement regarding how he knew Denbow in the manner that it was handled; nor does Denbow's testimony during the hearing on his motion for new trial establish the standard by which the matter should have been handled.

We apply a two-pronged test to resolve ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish the ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 694; *Garza*, 213 S.W.3d at 347-48; *Thompson*, 9 S.W.3d at 812. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812. But, as *Garza* explained, our review of ineffective assistance claims is "highly deferential" to trial counsel, as we presume "that counsel's actions fell within the wide range of reasonable and professional assistance." *Garza*, 213 S.W.3d at 348.

In reviewing complaints about trial counsel's alleged deficiencies, an appellate court must "avoid the deleterious effects of hindsight." *Thompson*, 9

6

S.W.3d at 813. Trial counsel's decisions are viewed with great deference when trial counsel's reasons for not undertaking a suggested strategy do not appear in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Because Denbow's attorney did not testify during the hearing on his motion for new trial, the attorney's strategy in choosing to handle voir dire in the manner at issue does not appear of record.

"A *Strickland* claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Id.* (quoting *Thompson*, 9 S.W.3d at 813, 814 (declining to speculate on counsel's failure to object to hearsay in light of a silent record)). Generally, when faced with a record that does not include an explanation of trial counsel's trial strategy, the record that is before the appellate court is deemed to be insufficient to demonstrate that trial counsel's conduct was ineffective, unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Having carefully reviewed the record, we conclude that Denbow's complaints about receiving ineffective assistance of counsel require that he present an appeals court with a more developed record. On a record that does not disclose counsel's strategy, we will not second-guess counsel's strategy in a case where the record does not demonstrate that no competent attorney would have handled voir

7

dire in the manner it was handled. *See id.* (evaluating whether challenged conduct was "'so outrageous that no competent attorney would have engaged in it'"); *see also Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("[A] reasonably competent counsel need not perform a useless or futile act[.]"). Because Denbow's claim alleging ineffective assistance is not firmly founded in the record, we overrule issue two. We affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 7, 2013
Opinion Delivered September 4, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.